**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| MATTHEW PRICHARD,<br>*Plaintiff-Appellant*,<br><br>v.<br><br>METROPOLITAN LIFE INSURANCE COMPANY; IBM LONG TERM DISABILITY PLAN,<br>*Defendants-Appellees*. | No. 12-17355<br><br>D.C. No.<br>4:10-cv-03313-SBA<br><br><br>OPINION |

Appeal from the United States District Court
for the Northern District of California
Saundra B. Armstrong, District Judge, Presiding

Argued and Submitted
January 15, 2015—San Francisco, California

Filed April 21, 2015

Before: J. Clifford Wallace, Milan D. Smith, Jr.,
and Michelle T. Friedland, Circuit Judges.

Opinion by Judge Wallace

**SUMMARY**[*]

**ERISA**

The panel vacated the district court's judgment in an action challenging an ERISA plan administrator's decision to deny the plaintiff long-term disability benefits.

The panel held that the district court erred in reviewing the benefits denial for an abuse of discretion, rather than de novo, when a Summary Plan Description conferred discretionary authority upon the plan administrator but a governing plan document in the form of an insurance certificate did not. The panel remanded for the district court to review the denial of benefits de novo.

**COUNSEL**

Scott Kalkin (argued), Roboostoff & Kalkin, San Francisco, California, for Plaintiff-Appellant.

Rebecca Ann Hull (argued), Sedgwick LLP, San Francisco, California, for Defendants-Appellees.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**OPINION**

WALLACE, Senior Circuit Judge:

Matthew Prichard appeals from the district court's judgment affirming Metropolitan Life Insurance Company's (MetLife) decision to deny him long-term disability benefits under the long term disability plan of his employer, IBM. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. Prichard argues that the district court erred in reviewing MetLife's decision for an abuse of discretion, rather than de novo. He argues in the alternative that even if the district court was correct in using the abuse of discretion standard, MetLife abused its discretion here. We hold that the district court should have reviewed MetLife's decision de novo, not for an abuse of discretion. We therefore vacate and remand for the district court to review MetLife's denial of benefits de novo.

I.

Prichard was covered by IBM's Long Term Disability Plan (Plan), which was insured and administered by MetLife. In January 2007, Prichard applied to MetLife for long term disability benefits under the Plan. MetLife approved Prichard's claim based on psychiatric disability and applied a retroactive start date of July 20, 2006. However, MetLife determined that Prichard's benefits period would be limited to twenty-four months, a limitation the Plan applied to mental or nervous disorders, among other disabilities.

On May 19, 2008, MetLife informed Prichard that his benefits would soon expire. MetLife invited him to submit medical information demonstrating that he suffered from

"non-limited medical conditions" which would qualify him to continue receiving benefits beyond the June 19, 2008, limitation date. MetLife subsequently obtained and reviewed Prichard's updated medical records. However, MetLife ultimately decided to terminate Prichard's benefits on July 12, 2008, because insufficient medical evidence supported the existence of a continuing "disability," as defined by the Plan. After a series of unsuccessful appeals to MetLife for a continuation of benefits under the Plan, Prichard brought this action in district court under 29 U.S.C. § 1132(a)(1)(B).

The parties submitted cross motions for judgment under Fed. R. Civ. P. 52(a), disputing the standard of review applicable to MetLife's decision to terminate benefits. MetLife argued that the district court should review MetLife's decision for an abuse of discretion, while Prichard argued that the district court should review it de novo. In support of its argument for an abuse of discretion standard, MetLife pointed to language in its Summary Plan Description (SPD) that stated, "Plan fiduciaries shall have discretionary authority to interpret the terms of the [Long-Term Disability] Plan and to determine eligibility for and entitlement to [Long-Term Disability] Plan benefits." Prichard countered by citing the Supreme Court's decision in *CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1877 (2011), which held that "the terms of statutorily required plan summaries . . . may [not] be enforced . . . as the terms of the plan itself." Prichard argued that the district court was required to review MetLife's decision de novo because *Amara* precluded MetLife from asserting the SPD's terms as those of the Plan, and no other Plan document in the administrative record conferred discretionary authority upon MetLife.

In ruling on the parties' cross-motions, the district court observed that the choice of which standard of review to apply "[d]epend[s] on the language of the ERISA plan at issue," because a court must review a denial of benefits de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). The district court concluded that it should review MetLife's denial of benefits for an abuse of discretion because it found that the SPD was the governing plan document and unambiguously granted MetLife discretionary authority to determine benefit eligibility. The district court then reviewed and affirmed MetLife's decision, concluding that MetLife did not abuse its discretion in denying Prichard additional benefits.

## II.

"We review de novo a district court's choice and application of the standard of review to decisions by fiduciaries in ERISA cases." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 962 (9th Cir. 2006). However, we review for clear error any findings of fact underlying the court's choice of the applicable standard of review. *Id.* A district court must review a plan administrator's denial of benefits de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits." *Firestone*, 489 U.S. at 115. MetLife bears the burden of proving the Plan's grant of such discretionary authority. *Thomas v. Or. Fruit Prods. Co.*, 228 F.3d 991, 994 (9th Cir. 2000).

### III.

Here, it is undisputed that the only document in the record that confers discretionary authority upon MetLife is the SPD. Prichard argues that after *Amara*, a grant of discretion located only within an SPD (as opposed to a formal plan document) is insufficient to warrant discretionary review. However, MetLife argues that Prichard misapprehends the scope of the Plan. According to MetLife, the SPD *is* the Plan (i.e., it is the only formal Plan document), and therefore the SPD's terms warrant discretionary review.

ERISA defines the word "plan" as "an employee welfare benefit plan or an employee pension benefit plan or a plan which is both," 29 U.S.C. § 1002(3), and it requires that a "plan" "be established and maintained pursuant to a written instrument," *id.* § 1102(a)(1). An SPD, in contrast, is a disclosure meant "to reasonably apprise [plan] participants and beneficiaries of their rights and obligations under the plan." *Id.* § 1022(a).

Although it would seem "peculiar for a document meant to 'apprise' participants of their rights '*under the plan*' to be itself part of the 'plan,'" *Amara*, 131 S. Ct. at 1882 (Scalia, J., concurring), apparently, particularly in the context of health plans, the SPD is sometimes argued to *be* the plan; that is, to serve simultaneously as the governing plan document.

> For certain types of plans, notably health plans, plan sponsors frequently take a "consolidated" approach to plan document drafting where the plan document and the SPD take the form of a single document. This approach . . . stands in contrast to typical

> practice for lengthier retirement plans that customarily have a separate SPD document that is distributed . . . apart from the full plan document . . . .

3 ERISA PRACTICE AND LITIGATION § 12:38. However, we need not decide here whether we should treat differently those cases in which the ERISA plan is alleged to have embraced this so-called "consolidated" approach. The present case, like *Amara*, is an "unconsolidated" case in which the ERISA plan has both a governing plan document and an SPD.

*Amara* concerned an employer's conversion of its traditional pension plan into a cash balance plan. 131 S. Ct. at 1870. The district found that the employer's initial descriptions of its post-conversion plan had been significantly incomplete and misleading to employees. *Id.* at 1872. The district court therefore ordered the terms of the plan reformed to give the employees their pre-conversion plan benefits plus their post-conversion plan benefits. *Id.* at 1875. The Second Circuit affirmed. *Amara v. CIGNA Corp.*, 348 F. App'x. 627 (2d Cir. 2009).

The Supreme Court vacated the district court's reformation because it concluded the reformation amounted to an alteration of the plan's governing documents. 131 S. Ct. at 1876–77. The Court held that although ERISA section 502(a)(1)(B) allows a civil action to be brought by a plan beneficiary "to recover benefits due to him under the terms of his plan," this statutory text gives a court power only to *enforce* the terms of the plan, not to change them. *Id.* The Solicitor General had argued that the district court *was* simply enforcing the plan's terms as written, because the court's reformation tracked the SPD's terms, and "the terms of the

summaries [were] terms of the plan." *Id.* at 1877.  The Court rejected this argument, however. *Id.* It held that "the summary documents, important as they are, provide communication with beneficiaries *about* the plan, but that their statements do not themselves constitute the *terms* of the plan." *Id.* at 1878.

For our purposes, it bears observing that *Amara*'s holding assumes the existence of both an SPD *and* a written plan instrument. That is, *Amara* addressed only the circumstance where both a governing plan document *and* an SPD existed, and the plan administrator sought to enforce the SPD's terms *over* those of the plan document. It did not address the situation MetLife alleges exists here—that a plan administrator seeks to enforce the SPD as the one and only formal plan document.

We are aware that, since *Amara*, several federal courts have stated that an SPD may constitute a formal plan document, consistent with *Amara*, so long as the SPD neither adds to nor contradicts the terms of existing Plan documents. *See, e.g.*, *Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1131 (10th Cir. 2011) ("We interpret *Amara* as presenting either of two fairly simple propositions, given the factual context of that case: (1) the terms of the SPD are not enforceable when they conflict with governing plan documents, or (2) the SPD cannot create terms that are not also authorized by, or reflected in, governing plan documents. We need not determine which is the case here, though, because the SPD does not conflict with the Plan or present terms unsupported by the Plan; rather it *is* the Plan."). MetLife would have us follow the reasoning of such courts and hold that Prichard is bound by the terms of the SPD because the SPD and the Plan allegedly "are one and the same."

However, we need not accept MetLife's suggestion because here the SPD and the Plan are not "one and the same." MetLife's theory is that the SPD is the only formal plan document in the record. MetLife supports its theory almost exclusively with the declaration of Mr. Zychowicz, IBM's manager of Health Benefits Delivery and Operations, which states that "no . . . separate formal plan document exists for the Plan . . . beyond the [SPD] booklet." This statement of IBM's belief is insufficient in the face of contrary indications in what appears to be the only plan document in the record before us.

The only document in the record that contains a clear indication that it is a Plan document is an insurance certificate. It expressly states that the Plan consists only of (1) "the Group Policy and its Exhibits, *which include the certificate(s)*" (emphasis added); (2) "[IBM]'s application"; and (3) "any amendments and/or endorsements to the Group Policy." The insurance certificate declares that those documents constitute the "entire contract" between IBM and MetLife, under which Prichard is provided insurance. Conspicuously absent from this exclusive list is the SPD. We have previously held that a Plan document's integration clause, which was "[p]lainly . . . intended to keep insureds . . . from binding [the administrator] to promises made in extraneous documents like the Benefit Summary," also precluded the administrator from binding insureds to the Summary's discretion-granting clause because "what is sauce for the gander must be sauce for the goose." *Grosz-Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154, 1161 (9th Cir. 2001) (internal quotation marks omitted). There is no reason to depart from that principle here. We therefore limit our analysis to the documents listed in the insurance certificate's integration clause.

The insurance certificate omits any grant of discretion to MetLife. Of course, the Plan in this case appears to consist of more than just the insurance certificate. It is possible that other official Plan documents outside the record contain discretionary language. But, if so, it was MetLife's burden to place that evidence before the court. *Thomas*, 228 F.3d at 994. MetLife failed to do so, and we are confined to the record before us.

MetLife would have us dismiss the insurance certificate as containing nothing more than the "terms of the insurance contract between MetLife and IBM," under which IBM made an election to have MetLife fund the Plan's benefits. According to MetLife, therefore, the insurance certificate cannot constitute part of—or "supersede"—the terms of the SPD.

However, the terms of the insurance certificate say otherwise. The insurance certificate is issued to and written for IBM's employees and contains the Plan's official terms regarding disability benefits. The certificate's opening page reads: "MetLife . . . certifies that You are insured for the benefits described in this certificate, subject to the provisions of this certificate. This certificate is issued to You under the Group Policy and it *includes the terms and provisions of the Group Policy* that describe Your [disability] insurance" (emphasis added). The insurance certificate defines "You and Your" as "an employee who is insured under the Group Policy for the insurance described in this certificate." Thus, contrary to MetLife's assertions, the certificate contains the Plan's relevant "terms and provisions" and is clearly issued to and written for IBM's employees who are beneficiaries under IBM's long-term disability plan.

The SPD, in contrast, is not part of the Plan's "written instrument." *Compare* 29 U.S.C. § 1102(a)(1) *with* § 1022(a). Indeed, the SPD itself declares that "official plan documents . . . remain the final authority" and "shall govern" in the event the SPD's terms conflict with those of official Plan documents. Accordingly, the district court clearly erred in finding that "the SPD, and not the insurance certificate, constitutes the Plan document."

Although the SPD in this case does indicate that MetLife has discretionary authority, the Supreme Court has made clear that statements made in SPDs "do not themselves constitute the *terms* of the plan." *Amara*, 131 S. Ct. at 1878. Because the official insurance certificate contains no discretion-granting terms, we will not, consistent with *Amara*, hold that the SPD's grant of discretion constitutes an additional term of the Plan. Consequently, the district court erred in applying the abuse of discretion standard of review. We therefore vacate and remand for the district court to review MetLife's denial of benefits de novo.

**VACATED AND REMANDED**.